**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                       No. CR 05-484  JB

JUAN GARCIA,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Review Detention Order, filed July 9, 2007 (Doc. 324).  The Court held a hearing on July 30, 2007.  The primary issues are: (i) whether Defendant Juan Garcia is a flight risk and/or a danger to the community; and (ii) whether there are conditions or a combination of conditions that the Court can impose to ensure the safety of the community and Garcia's appearance at all future court proceedings.   Because the United States has not established that Garcia is a flight risk and a danger to the community and, because the Court believes that there are conditions or a combination of conditions that it can impose to ensure the safety of the community and Garcia's appearance at all future court proceedings, the Court will vacate the Magistrate Judge's detention order and allow release under conditions.

**FACTUAL BACKGROUND**

Garcia listed his parents as Elodubina Bustillo of Chihuahua, Chihuahua, Mexico, and Alberto Garcia.  See Pretrial Services Report (dated July 5, 2007) at 2 ("Pretrial Services Report"). Alberto Garcia passed away in 2006.  See id.  Garcia noted four siblings: one of Los Lunas, New Mexico and three of Chihuahua, Chihuahua, Mexico.  See id.

Garcia was born on July 17, 1960.  See id.  Garcia related to Pre-Trial Services that he was born in Nonoava, Chihuahua, Mexico.  See id.  Garcia advised that he resided in Chihuahua, Chihuahua, Mexico, before relocating to Los Lunas, New Mexico in 1987.  See id.

Garcia has lived for twenty-one years in the Los Lunas area.  United States immigration records indicate that Garcia was granted Naturalized United States Citizenship on March 22, 2002 in Albuquerque.  See id.  Garcia resides at 345 Verde Drive, Los Lunas, New Mexico 87031.  See id.  He has resided at that address for three years.  See id.  Garcia reports that he had resided at that address with his spouse and three children since July 2005.  See id.  Inquiry of ChoicePoint's Discovery database corroborates Garcia's address history in Los Lunas.  See id.  Garcia's spouse also verified Garcia's current residence and residence history.  See id.

Garcia does not have a criminal record.  See id. at 2 (noting that "[r]esearch of local records and the National Crime Information Center (NCIC) database revealed no other criminal offense history.").

## PROCEDURAL BACKGROUND

On March 9, 2005, a grand jury returned an indictment charging Garcia and others with drug crimes.  See Redacted Indictment at 1, filed March 9, 2005 (Doc. 1)("Indictment").  The grand jury charged Garcia with conspiring to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  See  Indictment at 2.  If convicted of that offense, Garcia faces a sentence of ten years and a fine of up to $4,000,000.00.  See 21 U.S.C. § 841 (b)(1)(A)(stating that a person who violates 21 U.S.C. § 841(a)(1) shall be exposed to "a term of imprisonment which may not be less than 10 years or more than life"); 21 U.S.C.A. § 841(b); Response to Defendant's Sentencing Memorandum at 1, filed July 15, 2007 (Doc. 327)("Response")

On June 25, 2007, Garcia came before the Honorable W. Daniel Schneider, United States

Magistrate Judge, for purposes of arraignment.  See Clerk's Minutes, filed June 22, 2007 (Doc. 311).  Garcia pled not guilty to charges of conspiracy to distribute heroin, contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  See Clerk's Minutes, filed 25, 2007 (Doc. 315).  Judge Schneider entered an order detaining Garcia pending trial.  See Order of Detention Pending Trial, filed June 25, 2007 (Doc. 318).

Garcia contends that, at the time of his arraignment, he requested an opportunity to re-open his detention hearing because the information available to Judge Schneider confused Garcia with another person named Juan Garcia with the same date of birth who had a prior record of deportation and illegal re-entry.  See Motion ¶ 2, at 1.  Judge Schneider's Order, however, reflects that he found "the credible testimony and information submitted at the hearing establishes by (clear and convincing evidence)(a preponderance of the evidence) that the defendant has nothing to offer at this time and stipulates to detention." Order of Detention Pending Trial, filed June 25, 2007 (Doc. 318).  The Clerk's Minutes from June 25, 2007 also note that "deft stipulates to detention at this time." Doc. 315.  The Court has also reviewed the audio tape of the June 25, 2007 arraignment, and they indicate that Garcia contested the validity of the information in Probation/Pretrial Services' possession and asked for the detention hearing to be continued to allow his counsel to investigate that information.  Federal Digital Tape Recorder ("FTR") at 9:35:47-9:36:17.[1]

On July 2, 2007, Pre-Trial Services, for the first time, interviewed Garcia.  See Motion ¶ 3, at 2.  Garcia provided the following information: First, Garcia is a naturalized citizen, with a date of naturalization of March 22, 2002.  See id. ¶ 4(A) at 2; Pretrial Services Report at 2.  Second,

_____

[1] The hearing was recorded on tape rather than by written transcript.  The Court is, therefore, unable to provide pinpoint transcript citations to the dialogue at the hearing.  The Court instead cites to the record meter.

-3-

Garcia is married to Blasa Garcia and has three children: ages 23, 17, and 10. <u>See</u> Motion ¶ 4(B); Pretrial Services Report at 2. Third, Garcia, his wife, and family live at 345 Verde, Los Lunas, New Mexico 89031. <u>See</u> Motion ¶ 4(C); Pretrial Services Report at 2. The Garcias bought their home in January 2005 and have lived at that address for more than two years. <u>See</u> Motion ¶ 4(C); Pretrial Services Report at 2. Fourth, Garcia has worked in construction as a seasonal laborer for James Stevens for the past twelve years. <u>See</u> Motion ¶ 4(D); Pretrial Services Report at 2. Blasa Garcia also provided the paperwork showing the naturalization and pay stubs to Pre-Trial Services on July 2, 2007. <u>See</u> Motion ¶ 5, at 2.

The recommendation of Pre-Trial Services on July 2, 2007 was to release Garcia on his own recognizance, subject to conditions. <u>See</u> Pretrial Services Report at 3. Garcia agrees with the recommendation of Pre-Trial Services. <u>See</u> Motion ¶ 6, at 2.

On July 3, 2007, Garcia moved the Court to review its order of detention. <u>See</u> Motion at 1. On July 6, 2007, Garcia appeared before the Honorable Robert Hayes Scott, United States Magistrate Judge, to argue his Motion to Re-Open the Detention Hearing. <u>See</u> Clerk's Minutes at 1, filed July 6, 2007 (Doc. 322). Judge Scott denied the Motion by an Order entered the same date, and remanded Garcia to the United States Marshal's custody. <u>See</u> Order at 1, filed July 6, 2007 (Doc. 323). Judge Scott observed that Garcia has ties to Mexico and is a user of narcotics. <u>See</u> Clerk's Minutes at 1, filed July 6, 2007 (Doc. 322).

On July 9, 2007, Garcia filed an appeal of the Magistrate Judge's order. <u>See</u> Motion at 1. Garcia moves the Court, pursuant to 18 U.S.C. § 3145(b), to review the detention order entered on July 6, 2007, to revoke the order, and to allow him to return home and resume work. <u>See</u> Motion at 1. Garcia suggests that releasing him to allow him to work and to support his family, as Pre-Trial Services recommends, would reasonably assure his appearance in court as required, and would

-4-

reasonably assure the safety of the community.  See Motion ¶ 10, at 3.  The United States opposes

this motion.  See Response at 2.

At the July 30, 2007 hearing, Garcia contended that he has "shown by his life history . . . that

he can abide by the rules that the [C]ourt sets.  If the [C]ourt wants to release him on electronic

monitoring, there is a land line, there is a phone at his home.  The Court can do that."  Transcript

of Hearing (taken July 30, 2007)("Tr.") at 8:19-23 (Robins).[2]  Garcia suggested that, if the Court

does not agree that release on his recognizance is appropriate, electronic monitoring would be

acceptable.  Garcia asserted that electronic monitoring would give the Court a way to keep track of

him, because the Court could "see that he was going to work, going home, and going no place else."

Id. at 18:16-21 (Robins).

Garcia contended that he was not a "fugitive."  See id. at 4:3-7 (Robins).  Garcia did not

know why he was not brought in at the same time as the other defendants on the Indictment.  See

id. at 4:7-8 (Robins).  Garcia argued that the DEA apparently did not know he was a naturalized

citizen, despite him living "openly . . . [and] publically."  Id. at 18:1-10 (Robins).  Garcia asserted

that it "was known in the Los Lunas community that the other defendants had been arrested.

[Garcia] was not arrested, he stayed.  He had been naturalized.  He continued to work and to support

his family."  Id. at 18:12-15.

At the hearing, Garcia produced W-2s to demonstrate that he was working, and certificates

to show he is helping his children get through school.  See id. at 9:11-14 (Robins); Clerk's Minutes

at 3-23, filed July 30, 2007 (Doc. 342)(Exhibits A through D).  Garcia contended that his family is

in danger of losing their home, because he has been in jail and has not been able to help with house

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

payments, causing the and house payments to be late.  See Tr. at 20:2-11 (Robins).  Garcia

acknowledged that his work history was decreasing in the last couple years, but contended that it

was because his work is seasonal and because he has kidney problems.  See id. at 19:16-24 (Robins);

Clerk's Minutes, Exhibit A at 3.

Garcia conceded that he had used cocaine within two months of his arrest and was an

occasional user of cocaine in the past.  See Tr. at 9:23-25 (Robins).  Garcia asserted, however, that

his "admission [was that] . . .  he ha[d] done something wrong and . . . is willing to be monitored .

. .[and] supervised for it."  Id. at 10:1-4 (Robins).  Garcia argued that, if he "wanted to play games

with the Court, [he] never would have answered any questions about drug usage, but he answered

truthfully, and said that he had used it within two months prior to his arrest, and is willing to be

monitored for that."  Id. at 10:6-10 (Robins).  Garcia asserted that his admission was "a sign of

conforming to the rules of the Court."  Id. at 10:11-12 (Robins).

Garcia conceded that he had real ties to Mexico, but argued that "the fact that he has gone

through naturalization show[s] . . . that he has strong ties to the U[nited] S[tates] at this point."  Id.

at 10:13-15 (Robins).  Garcia argued that his ties to the United States are much stronger than his ties

to Mexico.  See id. at 10:22-24 (Robins).  Garcia contended that he would not be exposed to the

mandatory minimum penalty, "because of the safety valve," id. at 17:18-20 (Robins), and thus

would have less incentive to flee, see id. at 17:23-25 (Robins).

The United States argued that Judge Scott's specific concern regarding Garcia's cocaine

usage was that Garcia kept that usage hidden from his spouse.  See id. at 12:22-13:1 (Martinez).

The United States conceded, however, that Garcia was "not one of the major players" in the drug

conspiracy.  Id. at 13:21-23 (Martinez).  The United States nevertheless, argued that Garcia's strong

ties to Mexico give him "a strong incentive to be a flight risk."  Id. at 14:7-8 (Martinez).  The United

States contended that it has to demonstrate that no release conditions will reasonably assure Garcia's attendance at trial by a preponderance of the evidence, not by clear-and- convincing evidence. See id. at 16:8-19 (Court & Martinez).  The United States argued that Garcia's employment history was "going down" from year to year.  Tr. at 15:1-16:7 (Martinez & Court).  The United States noted that the only defendants in the drug conspiracy to receive ten years have been Joaquin Coroneles and his wife, but was unclear whether Coroneles' wife received ten years or not.  See id. at 19:1-10 (Court & Martinez).

## LAW REGARDING PRE-TRIAL DETENTION

The Bail Reform Act of 1984 requires the trial court to detain a defendant before trial if the United States demonstrates by clear-and-convincing evidence that no release conditions will reasonably assure the presence of the defendant at trial, and the safety of any other person and the community.  See 18 U.S.C. §§ 3142(e) and 3142(f)(2)(B); United States v. Cisneros, 328 F.3d 610, 612 (10th Cir. 2003)(noting that "the government had not sustained its burden of proof by a preponderance of the evidence that [the defendant] was a serious flight risk, nor had it sustained its burden of proof by clear and convincing evidence that [the defendant] was a danger to the community.").  18 U.S.C. § 3142(e) provides that:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which the maximum term of imprisonment is ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 80 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.).

18 U.S.C. § 3142(e).  18 U.S.C. § 3142(f)(2)(B) provides, in relevant part, that, "[t]he facts the judicial officer uses to support a finding pursuant to [18 U.S.C. § 3142(e)] that no condition or combination of conditions will reasonably assure the safety of any other person and the community

shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B).  The United States "must prove dangerousness to any other person or to the community by clear and convincing evidence."  United States v. Kelsey, 82 Fed.Appx. 652, 653 (10th Cir. 2003)(internal quotations omitted).  The United States " must prove risk of flight by a preponderance of the evidence."  United States v. Raymond, 101 Fed.Appx. 331, 332 (10th Cir. 2004)(internal quotations omitted).

If a grand jury finds probable cause to believe the defendant committed a violation of the Controlled Substances Act, carrying a maximum sentence of ten years or more, a presumption arises that the defendant will present a flight risk and a danger to the community.  The Bail Reform Act provides: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)."  18 U.S.C. § 3142(e).  See United States v. Cortez, 12 Fed.Appx. 708, 710 (10th Cir. 2001)(noting that " § 3142(e) provides a rebuttable presumption that no conditions of release will reasonably assure defendant's appearance and the safety of the community 'upon a finding of probable cause that defendant has committed a federal drug offense carrying a maximum prison term of ten years or more.'").

Upon presentation of evidence by the defendant, this presumption does not disappear, but remains to be considered by the court.  The United States Court of Appeals for the Tenth Circuit has explained:

Under section 3142(e), upon a finding of probable cause that the defendant has committed a federal drug offense carrying a maximum prison term of ten years or more, a rebuttable presumption arises that no conditions of release will assure defendant's appearance and the safety of the community.  Once the presumption is invoked, the burden of production shifts to the defendant.  However, the burden of

persuasion regarding risk-of-flight and danger to the community always remains with the [United States].  The defendant's burden of production is not heavy, but some evidence must be produced.  Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991).  See United States v. Zaghmot, No. 00-1348, 2000 WL 1678396 at *1 (10th Cir. November 8, 2000)(stating that, "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain."); United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989)(explaining that "[t]he presumption shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion.  However, that presumption is not a mere 'bursting bubble' that totally disappears from the judge's consideration after the defendant comes forward with evidence.").

## ANALYSIS

The United States is entitled to the benefit of the presumption of flight risk and risk of danger in this case.  See 18 U.S.C. § 3142(e)(stating that "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.").  If convicted of the crimes charged in the Indictment, Garcia faces a maximum term of life in prison and a minimum term of ten years in prison.  See If convicted of that offense, Garcia faces a sentence of ten years and a fine of up to $4,000,000.00.  See 21 U.S.C. § 841 (b)(1)(A)(stating that a person who violates 21 U.S.C. § 841(a)(1) shall be exposed to "a term of imprisonment which may not be less than 10 years or more than life").

-9-

1.      **Risk of Non-Appearance.**

Garcia has presented evidence to overcome this presumption of risk of nonappearance. Garcia has a job and a family.  Garcia is also a naturalized citizen of the United States.  These facts help to overcome the presumption.  See United States v. Stricklin, 932 F.2d at 1354-55 (explaining that "[t]he defendant's burden of production is not heavy, but some evidence must be produced.").

Judge Scott correctly identified the factors that indicate a risk of nonappearance.  There is no dispute that Garcia has ties to Mexico.  Garcia has been forthright in disclosing the presence of those ties. The Court believes, however, that Garcia's naturalization in the United States significantly counters his ties to Mexico.

Garcia has also been forthright about his substance abuse.  The Court has a concern regarding Garcia's wife not knowing about his cocaine use, and Garcia's admission that he has occasionally used cocaine.  The Court is not convinced, however, that Garcia's cocaine use and nondisclosure of that use to his wife significantly undermines the reliability of the information he has provided to Pretrial Services.

2.      **Risk of Danger.**

It appears that Judge Scott was primarily relying on the risk of Garcia's nonappearance to detain Garcia.  Congress and the Nation take offenses involving substance abuse very seriously; however, there is no indication in the record that Garcia has any criminal history of violence to anyone in the community, other than the nature of the offense with which he is charged.  Thus, the Court does not believe that the United States has proven by clear-and-convincing evidence that Garcia is a danger to the community and also does not believe that the United States has proven by a preponderance of the evidence that Garcia is a serious flight risk.  See United States v. Cisneros, 328 F.3d at 612 (noting that the United States must "sustain . . . its burden of proof by a

-10-

preponderance of the evidence that [the defendant] [i]s a serious flight risk, [or] . . . its burden of proof by clear[-]and[-]convincing evidence that [the defendant] [i]s a danger to the community.").

    **3.**    **<u>Conditions of Release</u>.**

The Court believes that, with Probation and Pretrial Services, it can fashion conditions to adequately manage Garcia's risk of nonappearance. The Court also believes that danger to the community, if any, can be managed. Thus, the Court will permit Garcia to be released, subject to the conditions in the Pretrial Services Report. These conditions include that Garcia: (i) report regularly to Probation/Pretrial Services as directed; (ii) is restricted from contact with his co-defendants in the alleged offenses; (iii) is prohibited from possessing a firearm, destructive device, or other dangerous weapon; (iv) must refrain from the use of alcohol and comply with random-alcohol screening as directed by Pretrial Services; (v) will refrain from any use or unlawful possession of a narcotic drug and other controlled substances unless prescribed by a licensed medical practitioner; (vi) will comply with random drug screening, and involve himself in substance-abuse counseling/treatment as directed by Pretrial Services; and (vii) is restricted to travel within the State of New Mexico, unless authorized by Pretrial Services. <u>See</u> Pretrial Services Report at 3-4. The Court will permit Garcia to work, but outside of work and very limited activities with his children and family, to which Pretrial Services agrees, Garcia will remain at home. With the conditions set forth in the Pretrial Services Report, electronic monitoring, and other conditions that Probation and Pretrial Services believe are necessary to effectively monitor Garcia, the Court will release Garcia pending trial. For these reasons and the reasons stated on the record, the Court lifts the order to detain Garcia pending trial.

    **IT IS ORDERED** that the Motion to Review Detention Order is granted. The Court has reviewed the detention order entered on July 6, 2007 and hereby vacates that Order to allow the

Defendant to return home and to resume working.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney for the
   District of New Mexico
Norman Cairns
Damon P. Martinez
  Assistant United States Attorneys
Albuquerque, New Mexico

     *Attorneys for Plaintiff*

Jacquelyn Robbins
Albuquerque, New Mexico

     *Attorney for Defendant Juan Garcia*